# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **JERRY HOLMAN AND TERESIA HOLMAN,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**AMU TRANS, LLC,**<br><br>**Defendant.** | **No. 14 C 04407**<br><br>**Magistrate Judge Mary M. Rowland** |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's motion to transfer pursuant to 28 U.S.C. § 1404(a). (Dkt. 21). Defendant asserts the case should be transferred to the Middle District of Tennessee or, alternatively, to the Northern District of West Virginia. For the reasons set forth below, the Court grants Defendant's motion to transfer to the Northern District of West Virginia.

## I. BACKGROUND

Plaintiffs filed this action against Defendant AMU Trans, LLC, on June 13, 2014, in the Northern District of Illinois seeking damages as a result of a motor vehicle accident that occurred in Martinsburg, West Virginia on October 17, 2012. (Dkt. 21 at 1). A driver for Defendant AMU Trans hit Mr. Holman's truck while Mr. Holman was stopped for traffic. Both Mr. Holman and the driver were driving trucks for their employers at the time of the accident. Following the accident, Mr.

Holman received medical treatment in West Virginia and Tennessee. (Dkt. 21 at 3). AMU Trans admits liability in its Amended Answer. (Dkt. 27 at 2). Thus, the only remaining issues before this Court are the nature and extent of Plaintiffs' alleged injuries. Plaintiff Jerry Holman seeks damages for injuries suffered as a result of the motor vehicle accident and Plaintiff Teresia Holman seeks damages for loss of consortium. (Dkt. 21 at 1). Plaintiffs are residents of Tennessee. AMU Trans was an Illinois limited liability company with its principal place of business in Cicero, Illinois at the time of the incident.

## II. DISCUSSION

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The decision to transfer venue under 28 U.S.C. § 1404(a) requires a weighing of factors for and against transfer. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). This weighing "involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge." *Id.* As the moving party, Defendant has the burden of demonstrating that the transferee district is "clearly more convenient." *Id.* at 219–20.

Several factors must be met for an action to be transferred to another venue: "(1) venue is proper in this district; (2) venue [and jurisdiction are] proper in the transferee district; (3) the transferee district is more convenient for both the parties

and witnesses; and (4) transfer would serve the interest of justice." *Jaramillo v. DineEquity, Inc.,* 664 F. Supp. 2d 908, 913 (N.D. Ill. 2009) (citations omitted).

**A. Transferor District**

A civil case may be brought in "a judicial district in which any defendant resides." 28 U.S.C. § 1391(b)(1). When the case was filed, Defendant was an Illinois limited liability company with its principal place of business in Cicero, Illinois.[1] (Dkt. 21 at 4). "[A]n entity . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction." 28 U.S.C. § 1391(c)(2). Thus, venue is proper in the Northern District of Illinois.

**B. Transferee Districts**

Defendant seeks to transfer this action to either one of two transferee courts: the Middle District of Tennessee or the Northern District of West Virginia. A civil case in which a federal court only has jurisdiction based on diversity of citizenship "may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose." *Kinney v. Anchorlock Corp.,* 736 F. Supp. 818, 821 (N.D. Ill. 1990). A case may be transferred to another district "where it might have been brought." 28 U.S.C. § 1404(a). "Although the phrase 'where it might have been brought' appears simple enough, the Supreme Court was called upon to interpret the phrase in *Hoffman v. Blaski*."

---

[1] Defendant was involuntarily dissolved on April 11, 2014. *See* http://www.ilsos.gov/corporatellc/CorporateLlcController.

*Encyclopaedia Britannica, Inc. v. Magellan Navigation, Inc.*, 512 F. Supp. 2d 1169, 1172 (W.D. Wis. 2007). In *Hoffman*, the Court reasoned that "where it might have been brought" means that the plaintiff has to have had the right to bring its case in the transferee district, which would require proper venue and personal jurisdiction over the defendants in the transferee district. *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960). However, as the Court explained, "where it might have been brought" did not mean "where it may now be rebrought, with defendants' consent." *Id.* at 342–43. "This interpretation appeared to create the bright-line rule that if for any reason the plaintiff's exact same case could not be brought as a matter of right in the transferee district (e.g., due to a lack of personal jurisdiction over defendants or a lack of subject matter jurisdiction in the transferee district) then the transferee district would not be a district 'where it might have been brought' under 28 U.S.C. § 1404(a)." *Encyclopaedia Britannica*, 512 F. Supp. 2d at 1173.

**1. Middle District of Tennessee**

The parties dispute whether the Middle District of Tennessee has the power to exercise personal jurisdiction over Defendant. Defendant, a trucking company, conducted business in Tennessee by using its highways and streets and paying a Motor Vehicle Use Tax for the years 2012 and 2013. (Dkt. 21 at 6). Plaintiffs argue that, under recent case law, Defendant's contacts with Tennessee are insufficient to satisfy general personal jurisdiction. The Court agrees.

The Due Process Clause authorizes personal jurisdiction over out-of-state defendants when the defendant has "certain minimum contacts with [the state]

such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Courts recognize two types of personal jurisdiction: general and specific. *Daimler AG v. Bauman*, —— U.S. ——, 134 S.Ct. 746, 751 (2014). General jurisdiction is "all-purpose"; it exists only "when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render it essentially at home in the forum State.'" *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, ——U.S. ——, 131 S.Ct. 2846, 2851 (2011)). Specific jurisdiction is case-specific; the claim must be linked to the activities or contacts with the forum. *Id.* In the present case, Defendant AMU Trans relies solely on general jurisdiction.

"In recent years, the Supreme Court has clarified and, it is fair to say, raised the bar for this type of jurisdiction." *Kipp v. Ski Enter. Corp. of Wisconsin, Inc.*, 783 F.3d 695, 698 (7th Cir. 2015). General jurisdiction exists only when the organization is "essentially at home" in the forum State. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, ——U.S. ——, 131 S.Ct. 2846, 2851 (2011). Thus far, the Supreme Court has identified only two places where that condition will be met: the state of the corporation's principal place of business and the state of its incorporation. *Kipp*, 783 F.3d at 698 (citing *Daimler*, 134 S.Ct. at 760). "Any additional candidates would have to meet the stringent criteria laid out in *Goodyear* and *Daimler*, which require more than the 'substantial, continuous, and systematic course of business' that was once thought to suffice." *Id.*

Here, AMU Trans' contacts with Tennessee are not extensive enough to say that AMU Trans was "at home" in the state. It is undisputed that neither of *Daimler's* "exemplar bases," *Daimler*, 134 S.Ct. at 760, applies: AMU Trans was an Illinois limited liability company and its principal place of business was in Illinois. AMU Trans notes that it has contacts with Tennessee, including using its highways and paying a Motor Vehicle Use Tax. These contacts, however, fall short of the *Goodyear/Daimler* standard. *See Kipp*, 783 F.3d at 698 (corporation's few contacts with Illinois, including its attendance at the annual trade show in Chicago, its use of that show to collect the email addresses of Illinois residents for marketing purposes, its targeting of Illinois customers through the Chicagoland Express package, its success in attracting a large number of such customers to the Devil's Head Resort, and the ability of Illinois customers to visit the Devil's Head Resort/Ski Enterprise website "come nowhere close to the *Goodyear/Daimler* standard"); *Farber v. Tennant Truck Lines, Inc.*, No. 14-5028, 2015 WL 518254 (E.D. Pa. Feb. 9, 2015) (although trucking corporation completed more than 4,500 deliveries and pick-ups in Pennsylvania over four year period, maintained employees within the state, purchased thousands of gallons of gasoline in Pennsylvania, and traveled regularly on Pennsylvania roads, corporation had no offices or bank accounts in Pennsylvania and was not incorporated there, and there was no indication that it was any more active in Pennsylvania than it was in any other state in which it delivered cargo, so as to support an essentially-at-home level of activity; "this allegedly regular and systematic conduct is insufficient to subject

[defendant corporation] to general jurisdiction in Pennsylvania under *Goodyear* and *Daimler*").

AMU Trans does not have any of the characteristics that courts have relied on to support a finding of general jurisdiction: it is not registered to do business in Tennessee, it does not advertise there, it has no offices, employees or bank accounts there, and there is no evidence that it sold or manufactured goods or services there. *See Goodyear*, 131 S.Ct. at 2852. It appears that AMU Trans' only contact with Tennessee is that it drove through it. This is insufficient to find that AMU Trans is subject to general jurisdiction in Tennessee, and thus venue is not proper in the Middle District of Tennessee.

**2. Northern District of West Virginia**

Alternatively, Defendant requests this Court transfer this case to the Northern District of West Virginia, the location of the accident giving rise to this civil action. The parties do not dispute that specific jurisdiction is proper in the Northern District of West Virginia as that is the district where the claim arose. The Court will therefore limit its analysis to whether this matter should be transferred to the Northern District of West Virginia.

**C. Convenience of the Parties and Witnesses**

To evaluate the convenience of one venue over another, courts look at the following five factors: "(1) the plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease of access to sources of proof, (4) the convenience of the

parties, and (5) the convenience of the witnesses." *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000).

**1. Plaintiff's Choice of Forum**

The plaintiff's choice of forum is usually given substantial weight, particularly if it is also the plaintiff's home forum. *Amorose v. C.H. Robinson Worldwide, Inc.*, 521 F. Supp. 2d 731, 735 (N.D. Ill. 2007). However, when the chosen forum is neither the plaintiff's home nor residence, courts afford less deference to the plaintiff's choice of forum. *Johnson v. United Airlines, Inc.*, No. 12 C 5842, 2013 WL 323404, at *5 (N.D. Ill. Jan. 25, 2013) ("the deference owed here is substantially reduced because Plaintiffs do not reside in this District"); *C. International, Inc. v. Turner Const. Co.*, No. 05 C 1496, 2005 WL 2171178, at *1 (N.D. Ill. Aug. 30, 2005) ("Where the plaintiff does not reside in the chosen forum, the plaintiff's choice of forum is still accorded some weight, but not as much as otherwise."). Moreover, "the weight given to plaintiff's choice of forum is lessened if the chosen forum has relatively weak connections with the operative facts giving rise to the claim." *Von Holdt v. Husky Injection Molding Systems, Ltd.*, 887 F. Supp. 185, 188 (N.D. Ill. 1995); *Amorose*, 521 F. Supp. 2d at 735 (the plaintiff's choice of forum is afforded less deference "when another forum has a stronger relationship to the dispute or when the forum of plaintiff's choice has no connection to the material events").

In this case, Plaintiffs' home forum is Tennessee and the incident occurred in West Virginia. The only relation this case has to the Northern District of Illinois is that the named Defendant is a former Illinois corporation. The operative facts

giving rise to this claim all stem from West Virginia, and all subsequent medical treatment related to damages occurred in either West Virginia or Tennessee. Thus, because Plaintiffs' choice of forum is not their home forum and because it has a relatively weak connection with the operative facts giving rise to this claim, the Court affords Plaintiffs' choice of forum minimal deference.

**2. Situs of Material Events**

The material events in this case arise out of a motor vehicle accident that occurred in West Virginia, and subsequent medical treatment that occurred in West Virginia and Tennessee. *See Tsaparikos v. Ford Motor Co.*, No. 02 C 6899, 2002 WL 31844949, at *2 (N.D. Ill. Dec. 18, 2002) (location where medical treatment has been provided following car accident may be considered the situs of material events). There is no evidence that any material events took place in the Northern District of Illinois. Therefore, this factor weighs in favor of transfer.

**3. Relative Ease of Access to Sources of Proof**

As Defendant has admitted liability in its Amended Answer, the only issue remaining is damages. All of the sources of proof for Plaintiffs' claimed damages are the medical providers in either West Virginia or Tennessee. There is no evidence that any sources of proof are located in the Northern District of Illinois. This factor weighs in favor of transfer.

**4. Convenience of the Parties**

In evaluating the convenience of the parties, the court considers "the parties' respective residences and their ability to bear the expenses of litigating in a particular forum." *Genocide Victims of Krajina v. L–3 Services, Inc.*, 804 F. Supp. 2d 814, 826 (N.D. Ill. 2011). As the movant, Defendant must show that "the original forum is inconvenient for the defendant and that the alternative forum does not significantly inconvenience the plaintiff." *Continental Cas. Co. v. Staffing Concepts, Inc.*, No. 06 C 5473, 2009 WL 3055374, at *5 (N.D. Ill. Sept. 18, 2009). As Plaintiffs reside in Tennessee, neither West Virginia nor Illinois appear to favor this factor for them. Plaintiffs do not argue, however, that transfer to West Virginia would impose a significant inconvenience or prevent them from meaningfully participating in the litigation, for financial or other reasons. Defendant, on the other hand, has established that litigation in Illinois poses a legitimate hardship to it, given the fact that none of the potential witnesses in this case are located in Illinois. Accordingly, this factor weighs in favor of transfer.

**5. Convenience of Witnesses**

The convenience of witnesses is generally viewed as the most important factor when considering a transfer of venue. *Hanley v. Omarc, Inc.*, 6 F. Supp. 2d 770, 775 (N.D. Ill. 1998). The convenience of non-party witnesses should be given more consideration than party witnesses "since party witnesses normally must appear voluntarily." *Amorose*, 521 F. Supp. 2d at 736. Sheer numbers alone, however, do not accurately reflect the full extent of the witnesses' convenience factor. *Bally Mfg. Corp. v. Kane*, 698 F. Supp. 734, 738 (N.D. Ill. 1988). Rather, in weighing the

relative convenience of the witnesses, the court must also consider the nature and the quality of the witnesses' testimony and the availability of the witnesses to compulsory process, as the live testimony of material, non-party witnesses is preferred. *Bousis v. Marriott Int'l, Inc.*, 47 F. Supp. 2d 1004, 1006 (N.D. Ill. 1999).

As Defendant has admitted liability, the only remaining issue will be damages claimed by Plaintiffs. It is undisputed that no witnesses or evidence pertaining to the accident, or any witness who can testify to the Holmans' claimed injuries, are located in Illinois. (Dkt. 21 at 3, 9). The non-party witnesses in this action will include doctors and physicians who examined and treated Mr. Holman following the accident. All of the medical records and physicians disclosed by Plaintiffs are located in either West Virginia or Tennessee.[2]

Plaintiffs assert that Defendant has not met its burden that this factor weighs in favor of transfer because: (1) Defendant has not been hampered in obtaining the medical records or depositions of treating physicians; (2) physicians, unlike potential uncooperative fact witnesses, will submit to deposition if paid their customary rate; and (3) the principal damages witnesses are in Tennessee, not the emergency room staff in West Virginia. (Dkt. 26 at 6-8). These arguments are not persuasive. First, while Defendant has the burden of establishing that the Northern

---

[2] In Plaintiffs' Rule 26(a)(1) disclosures, they disclosed a list of medical care providers who treated Mr. Holman for his alleged injuries, and a list of the medical facilities where he sought treatment. (Dkt. 21 at 2). Mr. Holman received medical treatment in West Virginia from the following providers: University Healthcare/Berkeley Medical Center in Martinsburg, West Virginia; West Virginia University Hospitals/City Hospital in Morgantown, West Virginia; Berkeley County Emergency Ambulance Authority in Martinsburg, West Virginia; and Martinsburg Radiology Associates in Martinsburg, West Virginia. (Dkt. 21, Ex. A).

District of West Virginia is more convenient, it is not obligated to establish that it has been "hampered" in obtaining discovery. Further, although Plaintiffs argue that medical evidence could just as easily be obtained in Illinois as in West Virginia through a video conference "from the comfort of Defendant counsel's Chicago office," (Dkt. 26 at 7), this argument erroneously focuses on the convenience of the defendant and completely ignores the convenience of the actual witnesses if called upon to provide testimony at trial. *Bally Mfg. Corp.*, 698 F. Supp. at 738 (in weighing the convenience of witnesses, court noted "live testimony of material non-party witnesses is preferred"). For those witnesses who live in West Virginia, the convenience of attending trial in West Virginia is clearly more convenient than traveling to Illinois. Likewise, for those witnesses who live in Tennessee, West Virginia appears to be a less burdensome venue. *See Hanley*, 6 F. Supp. 2d at 776 ("for those who live in New York, travel to New Jersey would be less expensive and burdensome than travel to Illinois").

Finally, Plaintiffs assert that none of the "principal damage witnesses" are located in West Virginia; rather, the main witness is located in Tennessee. (Dkt. 26 at 8). The fact that West Virginia is less convenient than Tennessee is immaterial to the court's analysis. At least some of the potential witnesses are located in West Virginia; this weighed against the undisputed fact that there are no witnesses located in Illinois favors transfer.

### D. Interests of Justice

In considering the interests of justice, the court "embraces traditional notions of judicial economy, rather than the private interests of the litigants and their witnesses." *Hanley*, 6 F. Supp. 2d at 776 (internal citation omitted). In determining which venue is more likely to result in the swift administration of justice, courts consider such factors as the speed at which the case will proceed to trial, the court's familiarity with the applicable law, the relation of the community to the occurrence at issue, and the desirability of resolving controversies in their locale. *Amoco Oil Co.*, 90 F. Supp. 2d at 961-62.

**1. Speed at which the case will proceed to trial.**

For the purposes of evaluating this factor, the courts use the reports from the Federal Court Management Statistics. *See, e.g., id.* According to the December 2014 Judicial Caseload Profile,[3] in the Northern District of West Virginia, the median time in months for a civil case from filing to disposition was 10.9 months. There was no data on the median time from filing to trial in civil cases. For the Northern District of Illinois, the time was 7 months from filing to disposition in a civil case, and 34.2 months from filing to trial in a civil case. Because the numbers do not indicate a clear answer as to which court would provide a speedier venue, this factor is relatively neutral in the transfer analysis.

**2. Familiarity with applicable law.**

---

[3] *See* Federal Court Management Statistics, http://www.uscourts.gov/statistics-reports/federal-court-management-statistics-december-2014.

This Court has jurisdiction in this matter based on diversity of citizenship. Accordingly, the Court will apply Illinois choice of law rules. *Trinity Industries Leasing Company v. Midwest Gas Storage, Inc.*, 33 F. Supp. 3d 947, 964 (N.D. Ill. 2014). When a case is filed in Illinois following an accident that occurred outside of the state, Illinois choice of law rules mandate that the laws of the state where the accident occurred govern the case. *Ingersoll v. Klein*, 46 Ill. 2d 42, 45-46 (1970). The cause of action in this case arose from a motor vehicle accident in West Virginia and will be governed by West Virginia law. Convenience dictates that the Northern District of West Virginia would be a more suitable location for a case governed exclusively by West Virginia statutory and common law. Regardless, federal courts do have experience applying the law of foreign states. *See Technical Concepts v. Zurn Industries*, 2002 WL 31433408, at *6 (N.D. Ill. 2002) ("[W]here the law in question is neither complex nor unsettled, the interests of justice remain neutral between competing courts."). Thus, this factor is neutral.

**3. The relationship of the community to the occurrence.**

"Resolving litigated controversies in their locale is a desirable goal of federal courts." *First National Bank v. El Camino Resources., Ltd.*, 447 F. Supp. 2d 902, 914 (N.D. Ill. 2006) (citation omitted). Because this case arose from events taking place in West Virginia, is controlled by West Virginia law, and will require participation by West Virginia medical providers, West Virginia has a great interest in having it litigated there. *See Toriumi v. Ritz-Carlton Hotel Co.*, No. 06 C 1720, 2006 WL 3095753, at *4 (N.D. Ill. Oct. 27, 2006) ("Because this case arises from events that

took place in Michigan, is controlled by Michigan law, and implicates witnesses and evidence that are located there, Michigan has a great interest in having it litigated there."); *Rugamboa v. Rungenga*, No. 06 C 1142, 2007 WL 317035, at *3 (N.D. Ill. Jan. 30, 2007) ("Because the accident occurred on a Michigan road, was investigated by Michigan law enforcement and involved Michigan emergency medical personnel, the State has a substantial interest in the resolution of this case."); *Childress v. Ford Motor Co.*, No. 03C3656, 2003 WL 23518380, at *6 (N.D. Ill. Dec. 17, 2003) ("The automobile accident, injuries, and most of the material events at issue occurred entirely within the Western District of Missouri. Because this controversy arises therein, it follows that the Western District of Missouri and the citizens of Missouri have a compelling interest in resolving the matter."). Accordingly, this factor cuts heavily in favor of transfer.

## **CONCLUSION**

Given the above considerations, the multitude of factors identified and evaluated by this Court clearly and overwhelmingly favor transfer to the Northern District of West Virginia. For the reasons set forth in this opinion, Defendant's Motion to Transfer Venue to the United States District Court for the Northern District of West Virginia (Dkt. 21) is **GRANTED**.

Dated: June 25, 2015                    Mary M Rowland